AO 106 (Rev. 06/09) Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

Eastern District of Missouri

In the matter of the search of

THE PREMISES LOCATED AT THE GPS COORDINATES OF
APPROX. 37.52536, -91.68811 MORE FULLY DESCRIBED IN
ATTACHMENT A.

)
)
)
)
)
)
)

Case No.     4:26 MJ 2044 JSD

SIGNED AND SUBMITTED TO THE COURT FOR FILING
BY RELIABLE ELECTRONIC MEANS

**FILED UNDER SEAL**

## APPLICATION FOR A SEARCH WARRANT

I, _____ Tyler S. Roby _____, a federal law enforcement officer or an attorney for the government
request a search warrant and state under penalty of perjury that I have reason to believe that on the following property:

SEE ATTACHMENT A

located in the _____ EASTERN _____ District of _____ MISSOURI _____, there is now concealed

SEE ATTACHMENT B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a) & 846 | Distribution and conspiracy to distribute methamphetamine |

The application is based on these facts:

SEE ATTACHED AFFIDAVIT WHICH IS INCORPORATED HEREIN BY REFERENCE

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested
under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

I state under the penalty of perjury that the foregoing is true and correct.

_____
*Applicant's signature*

Special Agent Tyler S. Roby, FBI
*Printed name and title*

Sworn to, attested to, or affirmed before me via reliable electronic means pursuant to Federal Rules of Criminal
Procedure 4.1 and 41.

Date: _____ 2/5/2026 _____

_____
*Judge's signature*

City and state:  St. Louis, MO

Honorable Joseph S. Dueker, U.S. Magistrate Judge
*Printed name and title*

AUSA:  PASHA

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

IN THE MATTER OF THE SEARCH OF ) 
THE PREMISES LOCATED **AT THE GPS** )     No. 4:26 MJ 2044 JSD
**COORDINATES OF APPROX. 37.52536,** )
**-91.68811** MORE FULLY DESCRIBED IN )
ATTACHMENT A. )     FILED UNDER SEAL

### AFFIDAVIT IN SUPPORT OF
### AN APPLICATION FOR A SEARCH WARRANT

I, **Tyler S. Roby**, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to search the premises located at the GPS coordinates of approximately **37.52536, -91.68811**, which has no address on file, in Dent County, Missouri in the Eastern District of Missouri, further described in Attachment A, for the things described in Attachment B.

2.      I, Tyler S. Roby, am a Special Agent with the Federal Bureau of Investigation (FBI) in the St. Louis Division. I have been an FBI agent since 2022. In connection with my official FBI duties, I investigate criminal violations of the Controlled Substances Act.  I have received training in the enforcement of federal narcotics laws, and I have been involved in all aspects of narcotics trafficking investigations, including (a) the debriefing of defendants, witnesses, and informants, as well as others who have knowledge of the distribution and transportation of controlled substances, and of the laundering and concealing of proceeds from drug trafficking; (b) surveillance; and (c) analysis of documentary and physical evidence.  I have also received training and participated in

investigations involving the interception of both wire communications and electronic communications involving digital display paging devices. Finally, I have testified in grand jury proceedings for violations of federal narcotics laws. Based on my training and experience as an FBI Special Agent, I am familiar with the ways in which narcotics dealers conduct their drug-related business, including, but not limited to, their methods of importing and distributing narcotics; their use of telephones and digital display paging devices, and their use of numerical codes and code words to identify themselves; the nature of the communication and/or to conduct their transactions; and their concealment of drug proceeds in real and personal property as well as legitimate businesses.

3.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents, law enforcement personnel, and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.      Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of Title 21, United States Code, Sections 841(a) and 846 (distribution of methamphetamine and conspiracy to distribute methamphetamine) ("the subject offenses") have been committed by **William WIND**, or other persons known and unknown. There is also probable cause to search the locations described in Attachment A for evidence of these crimes and contraband or fruits of these crimes, as described in Attachment B.

2

**LOCATIONS TO BE SEARCHED**

5.      The location to be searched is the premises located at the GPS coordinates of **approximately 37.52536, -91.68811** (the "**Subject Premises**").

6.      The **Subject Premises** is more fully described as follows.  The **Subject Premises** is a single-story structure that is described as an "earth home," which is a residential structure built partially or fully underground, utilizing surrounding soil for natural insulation. The **Subject Premises** has a green roof. The **Subject Premises**'s east exterior wall has white siding, along with a garage door and an entry door. The **Subject Premises**'s south exterior wall is tannish aged concrete. A gravel driveway circles the residence starting from the rear of the residence, going around the residence in a circular pattern, and returns to the rear of the residence. The GPS coordinates for the **Subject Premises** are approximately 37.52536, -91.68811; the **Subject Premises** does not have an address on file. The **Subject Premises** is in Dent County, Missouri, within the Eastern District of Missouri. Photographs of the **Subject Premises** appear in Attachment A.

**PROBABLE CAUSE**

I.      **Background**

7.      The United States, including the St. Louis Division of the FBI, is conducting a criminal investigation of **William WIND** regarding the commission of the subject offenses.

8.      In approximately December 2025, the detectives with the Rolla Area Drug

3

Enforcement Group (RADE) developed a confidential source (CS).[1] The CS stated they were currently purchasing methamphetamine from **WIND** at the Tradewinds Convenience Store located at located at 2602 MO-119, Salem, MO 65560. CS stated they would contact **WIND** via cellular telephone and **WIND** would provide details for a methamphetamine purchase.

9. Based on historic dealings with the Wind family, RADE was aware that the Tradewinds Convenience Store is one of several buildings that sit on property owned by the Wind family. Another building on that property is the **Subject Premises**, which is approximately 100 yards from the Tradewinds Convenience Store. The CS reported that WIND had told them that he resided in the **Subject Premises**. Investigators then utilized the CS to conduct eight controlled purchases of methamphetamine from WIND. For the final three controlled purchases, which are discussed in greater detail below, surveillance observed WIND leaving the **Subject Premises** shortly before the controlled purchase and returning to the **Subject Premises** shortly after the controlled purchase.

## II.     January 20, 2026 Controlled Purchase

10. On January 20, 2026, RADE and I met with the CS at a prearranged location. The

---

[1] The information obtained from the CS has been corroborated by physical surveillance, law enforcement databases, and several controlled buys. To date, the CS's information in connection with this investigation has never been found to be false or misleading, and investigators find him/her to be credible. The CS is working with the FBI for potential judicial consideration with the State of Missouri after the CS was arrested for possession of a controlled substance. The CS has prior arrests that include Felony Possession of a Controlled Substance, Passing a Bad Check, and misdemeanor stealing.

4

CS was given $350 and was tasked by RADE and the FBI to purchase approximately one ounce of methamphetamine from **WIND**. The CS's person and vehicle were searched prior to departure and upon return from the purchase and after relinquishing the purchased methamphetamine; no contraband was found. The CS's purchase activity was digitally recorded. RADE and the FBI followed the CS to the purchase location and back to the prearranged location for consistent surveillance.

11.     Specifically, the CS met with **WIND** at the Tradewinds Convenience Store. Before the purchase, RADE provided surveillance of the **Subject Premises** and the Tradewinds Convenience Store. RADE watched **WIND** leave the **Subject Premises** approximately five minutes before the purchase and drive to the Tradewinds Convenience Store. The CS later told investigators that while inside the convenience store, **WIND** provided the CS with one small baggie containing methamphetamine for $350. RADE investigators observed **WIND** return to his residence approximately five minutes after the controlled purchase.

12.     Following the purchase, the CS produced one small baggie of white crystalline substance containing approximately one ounce of suspected methamphetamine to RADE. RADE and the FBI later analyzed the CS digital recording and found the information provided by the CS to be credible. The suspected drugs were not field tested, but based on training and experience, agents believe the color, texture, and packaging of the suspected controlled substance was consistent with methamphetamine.

### III.    January 28, 2026 Controlled Purchase

13.     On January 28, 2026, RADE and I met with the CS at a prearranged location. The

5

CS was given $350 and was tasked by RADE and the FBI to purchase approximately one ounce of methamphetamine from **WIND**. The CS's person and vehicle were searched prior to departure and upon return from the purchase and after relinquishing the purchased methamphetamine; no contraband was found. The CS's purchase activity was digitally recorded. RADE and the FBI followed the CS to the purchase location and back to the prearranged location for consistent surveillance.

14.     Specifically, the CS met with **WIND** at the Tradewinds Convenience Store. Before the purchase, RADE provided surveillance of the **Subject Premises** and the Tradewinds Convenience Store. RADE watched Wind leave his residence approximately five minutes before the purchase and drive to the Tradewinds Convenience Store. The CS later told investigators that while inside the convenience store, **WIND** provided the CS with one small baggie containing methamphetamine for $350. The CS left the area. Approximately five minutes after the controlled purchase, RADE watched Wind leave and return to his residence.

15.     Following the purchase, the CS produced one small baggie of white crystalline substance containing approximately one ounce of suspected methamphetamine to RADE. RADE and the FBI later analyzed the CS digital recording and found the information provided by the CS to be credible. The suspected drugs were not field tested, but based on training and experience, agents believe the color, texture, and packaging of the suspected controlled substance was consistent with methamphetamine.

### IV.     February 3, 2026 Controlled Purchase

16.     On February 3, 2026, RADE and I met with the CS at a prearranged location. The

6

CS was given $350 and was tasked by RADE and the FBI to purchase approximately one ounce of methamphetamine from **WIND**. The CS's person and vehicle was searched prior to departure and upon return from the purchase and after relinquishing the purchased methamphetamine; no contraband was found. The CS's purchase activity was digitally recorded. RADE and the FBI followed the CS to the purchase location and back to the prearranged location for consistent surveillance.

17. Specifically, the CS met with **WIND** at the Tradewinds Convenience Store. Before the purchase, RADE provided surveillance of the **Subject Premises** and the Tradewinds Convenience Store. RADE watched Wind leave his residence approximately five minutes before the purchase and drive to the Tradewinds Convenience Store. The CS later told investigators that while inside the convenience store, **WIND** provided the CS with one small baggie containing methamphetamine for $350.

18. The CS left the area. RADE investigators observed **WIND** return to his residence approximately five minutes after the controlled purchase.

19. Following the purchase, the CS produced one small baggie of white crystalline substance containing approximately one ounce of suspected methamphetamine to RADE. RADE and the FBI later analyzed the CS digital recording and found the information provided by the CS to be credible. The suspected drugs field tested positive for methamphetamine.

\* \* \*

20. Based on training and experience, as well as the totality of this investigation and the information outlined above, I believe that **WIND** and his yet to be identified criminal associates

7

are utilizing the **Subject Premises** to store controlled substances and proceeds from the sale of controlled substances in violation of Title 21, United States Codes, Sections 841(a)(1) and 846, and the **Subject Premises** contains evidence, fruits, and instrumentalities of the violations of those statutes.

21.     Indeed, as part of my experience and training and that of other law enforcement officers participating in the investigation, we have accumulated information and training in the areas of narcotics based economic crime.  I have had extensive experience, as have other members of the investigating team, in interviewing defendants, witnesses, informants and others who have experience in the gathering, spending, converting, transporting, distributing, and concealing of proceeds of narcotics trafficking.  Based upon my and the investigating team's experience and our participation in other pending and completed controlled substances and/or financial investigations involving ongoing, extensive drug distribution conspiracies involving large amounts of controlled substances and money, I know the following:

a.     It is common for drug dealers to secrete contraband, proceeds of drug sales, and records of drug transactions in their residence, vehicles, and other buildings under their control.

b.     Drug traffickers frequently keep near at hand, in their residence, vehicles or other buildings under their control, paraphernalia for packaging, cutting, weighing and distributing of drugs.  These paraphernalia include, but are not limited to scales, plastic bags, and cutting agents.

c.      Drug traffickers maintain books, records, receipts, notes, ledgers, airline tickets, computer hard drives and disk records, money orders and other papers relating to the transportation, ordering, sale and distribution of controlled substances.  Drug traffickers commonly "front" (provide drugs on consignment) controlled substances to their clients.  The aforementioned books, records, receipts, notes, ledgers, etc. are maintained where the drug traffickers have ready access to them, specifically in their residence or in other buildings under their control.

d.      Drug traffickers commonly maintain telephone bills, invoices, packaging, cellular batteries and/or charging devices, cancelled checks or receipts for telephone purchase/service; cellular and/or landline telephones; digital and/or alphanumeric text (two-way) pagers; computers capable of e-mail and/or chat-room communication, answering machines; address and/or telephone books and papers reflecting names, addresses, and/or telephone numbers of sources of supply, of customers, and/or evidencing association in fact with  persons known to traffic in controlled substances or to facilitate such trafficking.  These records are maintained where drug traffickers have ready access to them, specifically, in their residence or in other buildings under their control.

e.      Drug traffickers take or cause to be taken photographs of them, their associates, their property and their product.  These traffickers frequently maintain these photographs in their residence or other buildings under their control.

f.      Persons involved in large-scale drug trafficking conceal in their residence or other buildings under their control large amounts of currency, precious metals, jewelry, and financial instruments, including, but not limited to, stocks and bonds, papers, titles, deeds and other

9

documents reflecting ownership of vehicles and property utilized in the distribution of controlled substances or which are proceeds from the distribution of controlled substances.

g.      When drug traffickers amass large proceeds from the sale of drugs that the drug traffickers attempt to legitimize these profits.  I know that to accomplish these goals, drug traffickers utilize financial institutions, including but not limited to, foreign and domestic banks and their attendant services, securities, cashier's checks, money drafts, letters of credit, brokerage houses, real estate, shell corporations and business fronts.  They maintain record of these transactions in their residence or other buildings under their control.

h.      Evidence of occupancy and residence including, but not limited to utility and telephone bills, canceled envelopes, rental or lease agreements, and keys, is relevant evidence in narcotics prosecutions.

i.      Drug traffickers frequently possess firearms and/or other weapons in their residence, vehicles or other buildings under their control to protect their methamphetamine and/or United States currency.

j.      It is common for drug traffickers to travel to major distribution centers to purchase drugs and/or to arrange for its distribution elsewhere in the United States.  After purchasing drugs, these drug traffickers will transport or cause to be transported, drugs to the areas in which they will distribute the drugs.  The methods of transportation include, but are not limited to, commercial airlines, private airlines, rental automobiles, private automobiles, and government and contract mail carriers.  Records of their travel are frequently kept in their residence or other buildings under their control.

10

## CONCLUSION

22.     Based on the foregoing I submit that this affidavit supports probable cause for a warrant to search the Premises described in Attachment A and seize the items described in Attachment B.

23.     I further request that the Court order that all papers in support of this application, including the affidavit and warrant, be sealed until further order of the Court.  These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation.  Accordingly, there is good cause to seal these documents because their premature disclosure may give targets an opportunity to flee/continue flight from prosecution, destroy or tamper with evidence, change patterns of behavior, notify confederates, or otherwise seriously jeopardize the investigation.

I state under penalty of perjury the forgoing is true and correct.

Respectfully submitted,

Tyler S. Roby
Special Agent
FBI

Sworn to, attested to, and affirmed before me via reliable electronic means pursuant to Federal Rules of Criminal Procedure 4.1 and 41 on this 5th       day of February 2026.

HONORABLE JOSEPH S. DUEKER
UNITED STATES MAGISTRATE JUDGE
Eastern District of Missouri

11

**ATTACHMENT A**

*Properties to be searched*

The location to be searched is the premises located at the GPS coordinates of **approximately 37.52536, -91.68811** (the "**Subject Premises**").

The **Subject Premises** is more fully described as follows.  The **Subject Premises** is a single-story structure that is described as an "earth home," which is a residential structure built partially or fully underground, utilizing surrounding soil for natural insulation. The **Subject Premises** has a green roof. The **Subject Premises**'s east exterior wall has white siding, along with a garage door and an entry door. The **Subject Premises**'s south exterior wall is tannish aged concrete. A gravel driveway circles the residence starting from the rear of the residence, going around the residence in a circular pattern, and returns to the rear of the residence. The GPS coordinates for the **Subject Premises** are approximately 37.52536, -91.68811; the **Subject Premises** does not have an address on file. The **Subject Premises** is in Dent County, Missouri, within the Eastern District of Missouri. A photograph of **subject premises** appears below, circled with a red box, along with an aerial photograph.





2

## ATTACHMENT B

*Property to be seized*

1.      All records and information relating to violations of Title 21, United States Code, Sections 841(a)(1) and 846, that constitutes fruits, evidence, and instrumentalities of those violations involving **William WIND** and others known and unknown, including:

a.  Controlled substances;

b.  Paraphernalia for packaging, cutting, weighing and distributing controlled substances, including, but not limited to, scales, baggies and spoons;

c.  Books, records, receipts, notes, ledgers, computer hard-drives and disk records, and other papers relating to the transportation, ordering, purchasing and distribution of controlled substances and/or firearms;

d.  Telephone bills, invoices, packaging, cellular batteries and/or charging devices, cancelled checks or receipts for telephone purchase/service;

e.  Cellular telephones, digital and/or alphanumeric text (two-way) pagers; computers capable of e-mail and/or chat-room and/or digital communication, answering machines; address and/or telephone books and papers reflecting names, addresses, and/or telephone numbers of sources of supply, of customers, and/or evidencing association with persons known to traffic in controlled substances or to facilitate such trafficking;

f.  Photographs, in particular photographs of co-conspirators, assets and/or controlled substances;

3

g. United States currency, precious metals, jewelry, and financial instruments, including, but not limited to, stocks and bonds, papers, titles, deeds and other documents reflecting ownership of vehicles and property utilized in the distribution of controlled substances or which are proceeds from the distribution of controlled substances;

h. Books, records, receipts, pay stubs, employment records, bank statements and records, money drafts, letters of credit, money order and cashier's checks receipts, passbooks, bank checks and other items evidencing the obtaining, secreting, transfer and/or concealment of assets and the obtaining, secreting, transfer, concealment and/or expenditure of money;

i. Papers, tickets, notes, schedules, receipts and other items relating to travel, including, but not limited to, travel to and from Salem, Missouri and elsewhere;

j. Indicia of occupancy, residency, rental and/or ownership of the vehicles and/or premises described above, including, but not limited to, utility and telephone bills, cancelled envelopes, rental or lease agreements and keys;

k. Firearms and/or weapons;

l. Vehicles within the curtilage of the **Subject Premises**; and

m. Security systems, cameras, cables, recording devices, monitors, and other items or equipment pertaining to video surveillance of the **Subject Premises**.

4